UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THERMAL VENTURES, INC., et al.<br><br>Plaintiffs<br><br>-vs-<br><br>THERMAL VENTURES II, L.P., et al.<br><br>Defendants | CASE NO. 1:05 CV 83<br><br><br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING THIS ACTION PENDING CONCLUSION OF ARBITRATION |

UNITED STATES DISTRICT COURT JUDGE LESLEY WELLS

On 14 January 2005, defendants Thermal Ventures II, L.P. ("TV2"), Yorktown Energy Partners IV, L.P. ("YEP4") and Yorktown Thermal GP, Inc. ("YTGP") filed a notice of removal regarding the instant matter from Summit County Court of Common Pleas. (Docket No. 1). Defendant claimed this Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1441(a) and (b) based upon allegation in the complaint of plaintiffs Thermal Ventures, Inc. ("TVI"), Thermal Ventures, L.P. ("TVLP"), Carl E. Avers and Akron Thermal Cooling Works, L.P. ("ATCW"), of defendants' past and ongoing violations of the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1961 et seq., and "pattern of racketeering activity as defined in 18 U.S.C. § 1341."

On 14 February 2005, plaintiffs moved for a Temporary Retraining Order ("TRO") and Preliminary Injunction against defendants seeking to preclude them from taking any action with respect to the management of the corporate entity in dispute in this case, Akron Thermal, L.P. ("ATLP"). (Docket No. 6). On 15 February 2005, Federal District Court Judge O'Malley, as Miscellaneous Judge, convened the parties to hear arguments concerning the motion for a TRO, which she denied in an Opinion and Order on 16 February 2005. (Docket No. 7).

Representations in the course of the 15 February 2005 TRO hearing indicated that the RICO claims, upon which defendants predicated their notice of removal, have already been ruled upon in a separate arbitration proceeding. As a result, this Court required the parties show cause why this case should not be dismissed for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. (Docket No. 8). The parties filed briefs regarding this issue on Wednesday, 23 March 2005. (Docket Nos. 9 &12). On that same date, defendants filed a motion to compel arbitration. (Docket No. 10). Plaintiffs did not file a memorandum in opposition to defendants' motion to compel arbitration as is required under the local rules by one who opposes such a motion. See Local Rule 7.1(d).

For the reasons set forth below this Court will not dismiss this action pursuant to the Rooker-Feldman doctrine, and will grant the defendants' motion to compel arbitration.

2

## The Rooker-Feldman Doctrine

The Rooker-Feldman doctrine provides that federal district courts generally lack jurisdiction to review and determine the validity of state court judgments, even in the face of allegations that "the state court's action was unconstitutional." See Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413, 415-16 (1923) ; see also Blanton v. United States, 94 F.3d 227, 233-34 (6th Cir.1996). Instead, review of final determinations in state judicial proceedings can be obtained only in the United States Supreme Court. 28 U.S.C. § 1257; Feldman, 460 U.S. at 476.

In their respective responses to this Court's Order to Show Cause, the parties agree that the Rooker-Feldman doctrine is not a bar to this Court's exercise of jurisdiction over the RICO claims because no state court judgment has issued with regard to such claims. (See Docket 12, at 5; Docket No. 9). Thus, this Court will not dismiss the instant action based upon the Rooker-Feldman doctrine, but will consider the defendants' unopposed motion to compel arbitration. (Docket No. 10).

## The Federal Arbitration Act

Under the Federal Arbitration Act, 9 U.S.C. Sections 1 - 16 (the 'FAA'), written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. If a court determines that a particular cause of action is covered by an arbitration clause, it must stay the proceedings until the arbitration proceedings are complete. Fazio v. Lehman Bros. Inc., 340 F.3d 386, 392 (6th Cir. 2003) (citing 9 U.S.C. § 3). However, if

3

all claims pending against a party are subject to arbitration, then the court may dismiss such claims rather than issue a stay. Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Hensel v. Cargill, Inc., 1999 WL 993775, at *4 (6th Cir. 1999) (*unpublished*).[1]

Establishing a liberal policy favoring arbitration, EEOC v. Waffle House, Inc., 534 U.S. 279, 288 (2002), the FAA was designed to "ensure judicial enforcement of privately made agreements to arbitrate," Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). Accordingly, any doubts regarding "the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); see also Masco Corp. v. Zurich Am. Ins. Co., 382 F.3d 624, 627 (6th Cir. 2004). The Sixth Circuit Court of Appeals applies a four-part test to determine whether to grant motions to compel arbitration:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000).

---

[1] While addressing a slightly different issue, another Sixth Circuit case, Green v. Ameritech Corp., also cited favorably to the Alford holding. 200 F.3d 967, 973 (6th Cir. 2000).

As to the first factor of <u>J.D. Byrider</u>, defendants have produced written agreements to arbitrate which were signed on 28 June 2000 by all the parties to this action <u>except</u> ATCW. The agreements to arbitrate are set forth in three different documents, respectively titled: (1) "Form of Amended and Restated Agreement of Limited Partnership of Thermal Ventures II, L.P." (the "Limited Partnership Agreement"); (2) "Convertible Subordinated Note and Covertible [sic] Preferred Partnership Unit Purchase Agreement and Contribution Agreement" (the "Purchase Agreement"); and (3) "Purchase Option Agreement" (the "Option Agreement"). The parties to this litigation were signatories to these agreements as shown in the table below:

|  | The Limited Partnership Agreement | The Purchase Agreement | The Option Agreement |
|---|---|---|---|
| Thermal Ventures, Inc.* | YES | YES | YES |
| Thermal Ventures, L.P.* | NO | NO | YES |
| Akron Thermal Cooling Works, L.P. | NO | NO | NO |
| Carl E. Avers | NO | YES | NO |
| Thermal Ventures II, L.P.* | NO | YES | YES |
| Yorktown Energy Partners IV, L.P. | NO | YES | NO |
| Yorktown Thermal, Inc. | YES | YES | NO |
| Yorktown Thermal, G.P., Inc. | YES | YES | NO |

5

As shown in the table above, not all of the parties signed the same agreement; nonetheless, all were signed on the same day to further the same business transaction. The arbitration provisions are set forth at §10.11 of the Limited Partnership Agreement, §8.6 of the Purchase Agreement, and §5.6 of the Option Agreement. Each arbitration provision is identical and refers to similar exhibits for detail regarding the arbitration procedure and practice to be employed:

> 10.11 **Dispute Resolution**. All disputes, claims, or controversies arising out of or in relation to this Agreement or the validity or performance hereof that are not resolved by mutual agreement shall be resolved solely and exclusively in the manner provided in **Exhibit B** hereto.

(Docket No. 19, Exhibit 1, §10.11; Exhibit 2, at §8.6; and Exhibit 3, at §5.6). Under the second J.D. Byrider factor, the foregoing is a very broad arbitration agreement.

Given the breadth of the arbitration provisions at issue here, and the ongoing arbitration, there can be little doubt that each of the claims asserted in the complaint fall within the scope of the parties' arbitration agreements. Indeed, these claims were asserted as defenses and/or counter-claims in an arbitration proceeding that is pending between the parties.[2] Plaintiffs represent that they have "filed with the American

---

[2] In addition to providing the Court with copies of the arbitration agreements themselves, the defendants have presented this Court with documentation evidencing an ongoing arbitration before the American Arbitration Association covering the very same issues raised in plaintiffs' complaint. (Docket No. 12, Exhibits 1-3). The parties to the arbitration include TV2 (the claimant), TVI and TVLP (the respondents). The attorneys representing respondents in the arbitration proceeding are the same attorneys who represent all of the plaintiffs in this case, and the attorneys representing claimants in the arbitration proceeding represent all of the defendants in this case.

Arbitration Association a Notice of Dismissal, dismissing [their] RICO claim from the arbitration proceedings." No copy of the document was submitted to the Court.[3]

The third issue to consider under J.D. Byrider is whether Congress intended any asserted federal statutory claims to be non-arbitrable. J.D. Byrider, 228 F.3d at 714. Here, the answer is no. The only federal statutory claims asserted by plaintiffs are RICO claims, and "[a] RICO claim is arbitrable." Kerr-McGee Refining Corp. v. M/T Triumph, 924 F.2d 467, 469 (2d Cir. 1991); see also Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987).

The final issue under J.D. Byrider is whether to stay the proceeding in the event that some, but not all, of the claims in the action are subject to arbitration. J.D. Byrider, 228 F.3d at 714. Here, not all of the claims are subject to arbitration. Specifically, those claims asserted by ATCW are not subject to arbitration because ATCW is not a party to any of the agreements submitted to the Court. Defendants argue that even though ATCW is not a signatory to the arbitration agreements, this Court should compel ATCW to arbitrate under the doctrine of equitable estoppel. (Docket No. 10, at 12-13). Equitable estoppel may be used to prevent a signatory to an arbitration agreement from objecting to the efforts of a non-signatory to compel arbitration. See MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942 (11th Cir. 1999). Defendants have provided this Court with no controlling authority holding that a non-signatory to an arbitration agreement

---

[3]During the TRO hearing on 15 February 2005, Plaintiffs admitted that, aside from the inclusion of ATWC and Avers in the instant action, the counterclaims asserted in the arbitration were the "same" as those in the arbitration and state action between the parties. According to Plaintiffs' counsel "the RICO action was filed in the arbitration . . . ."

may be equitably estopped from arguing that it may not be compelled to arbitrate with a <u>signatory</u>.

Although ATCW cannot be ordered to participate in arbitration, this Court will stay ATCW's claims pending resolution of arbitration between the remaining parties. ATCW's claims are identical to the other plaintiffs, and are based in part upon the documents that include the arbitration agreements at issue. Further, ATCW is related to the remaining plaintiffs. Under these circumstances, continuation of this action as to ATCW's claims would be contrary to the letter and the purpose of the Federal Arbitration Act, and would be a waste of precious judicial resources. Thus, this action – including ATCW's claims – shall be stayed pursuant to Section 3 of the Federal Arbitration Act. 9 U.S.C. § 3.

## CONCLUSION

For the reasons set forth above, the defendants' motion to compel arbitration (Docket No. 10) is **GRANTED**. It is further ordered that:

(1)   Thermal Ventures, Inc., Thermal Ventures, L.P., Carl E. Avers, Thermal Ventures II, L.P., Yorktown Energy Partners IV, L.P., Yorktown Thermal, Inc., and Yorktown Thermal G.P., Inc. are ordered to arbitrate their dispute in accordance with the procedures set forth in the Arbitration Agreements dated 28 June 2000.

    (2)    Further proceedings are **STAYED** and this case is **CLOSED**, subject to reopening upon written motion of Akron Thermal Cooling Works, L.P. or any other proper party in interest at the conclusion of the arbitration proceedings among Thermal Ventures, Inc., Thermal Ventures, L.P., Carl E. Avers, Thermal Ventures II, L.P., Yorktown Energy Partners IV, L.P., Yorktown Thermal, Inc., and Yorktown Thermal G.P., Inc.

IT IS SO ORDERED.

                                          _s/ Lesley Wells_
                                      UNITED STATES DISTRICT JUDGE
                                              9-29-05